# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on May 7, 2012

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | GRAND JURY ORIGINAL |
| | : | |
| ANGEL CASTILLO, | : | VIOLATION:  21 U.S.C. § 846 |
| STEPHEN ANTHONY SCALES, | : | (Conspiracy to Distribute and Possess |
| also known as Tony, | : | With Intent to Distribute One Kilogram |
| LAWRENCE BAYLOR, | : | or More of Heroin) |
| MERLE VERNON WATSON, | : | 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C) |
| ALBERT BRISCOE, | : | (Unlawful Distribution of Heroin); |
| HAROLD SMITH, | : | 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C) |
| also known as Ibraheem Ahmed, | : | (Unlawful Possession With Intent to |
| ANTHONY COACHMAN, | : | Distribute Heroin) |
| DWAYNE MORGAN, | : | 21 U.S.C. § 853 |
| MAURICE ABNEY, and | : | (Criminal Forfeiture) |
| HARLEY MORGAN, | : | |
| also known as Greg, | : | |
| | : | |
| Defendants. | : | |

# **I N D I C T M E N T**

The Grand Jury charges that:

## COUNT ONE

From on or about at least July 2012 and continuing until at least December 11, 2012, within the District of Columbia, the State of Maryland, the State of New York, and elsewhere, **ANGEL CASTILLO; STEPHEN ANTHONY SCALES, also known as Tony; LAWRENCE BAYLOR; MERLE VERNON WATSON; ALBERT BRISCOE; HAROLD SMITH, also known as Ibraheem Ahmed; ANTHONY COACHMAN; DWAYNE MORGAN; MAURICE ABNEY; HARLEY MORGAN also known as Greg**, did knowingly and willfully

combine, conspire, confederate and agree together and with other persons both known and unknown to the Grand Jury, to unlawfully, knowingly and intentionally distribute and possess with intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance and the said mixture or substance was one kilogram or more, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(i).

### Goal of the Conspiracy

It was the goal of the conspiracy to acquire money and other things of value by obtaining and selling quantities of heroin in the District of Columbia and elsewhere.

### Manner and Means to Accomplish the Goals of the Conspiracy

From on about July 2012 and continuing until on or about December 18, 2012, co-conspirators, both known and unknown to the Grand Jury, obtained wholesale quantities of heroin which they maintained for later distribution to other drug dealers.

From on or about July 2012 and continuing until on or about December 18, 2012, co-conspirators both known and unknown to the Grand Jury distributed wholesale quantities of heroin to drug dealers, either in exchange for money or on a consignment basis, or both, for re-distribution in the Washington D.C. area and elsewhere.

During the course of the conspiracy, co-conspirators, both known and unknown to the Grand Jury, arranged drug transactions by, among other means, telephone conversations and text messages in which they used coded language in order to avoid detection by law enforcement.

### Overt Acts

In furtherance of this conspiracy and in order to affect the objects and goals thereof, the defendants and other co-conspirators known and unknown to the Grand Jury committed overt acts, including, but not limited to, the following:

(1) On or about July 18, 2012, within the period of the conspiracy, STEPHEN SCALES sold a mixture and substance containing a detectable amount of heroin in exchange for $1,000 in United States currency to an individual whose name is known to the Grand Jury.

(2) On or about August 9, 2012, within the period of the conspiracy, MERLE WATSON in a telephone conversation with STEPHEN SCALES said, using coded language, that the heroin that STEPHEN SCALES had distributed to him appeared to be satisfactory and that he was going to try to have other individuals test it.

(3) On or about August 9, 2012, within the period of the conspiracy, STEPHEN SCALES and MERLE WATSON had a telephone conversation in which, using coded language, STEPHEN SCALES advised that he had better quality heroin than that which he had distributed to MERLE WATSON previously, and they arranged to meet later the same day.

(4) On or about August 9, 2012, within the period of the conspiracy, STEPHEN SCALES and DWAYNE MORGAN had a telephone conversation in which, using coded language, they discussed DWAYNE MORGAN's opinion of the quality of some heroin and made arrangements to meet the following day.

(5) On or about August 10, 2012, within the period of the conspiracy, STEPHEN SCALES and DWAYNE MORGAN had a telephone conversation in which they agreed to change the location of a planned meeting for the distribution of drugs in order to avoid surveillance by law enforcement.

(6) On or about August 17, 2012, within the period of the conspiracy, STEPHEN SCALES sold a mixture and substance containing a detectable amount of heroin in exchange for $1,000 in United States currency to an individual whose name is known to the Grand Jury.

(7) On or about August 19, 2012, within the period of the conspiracy, STEPHEN SCALES and HAROLD SMITH, also known as Ibraheem Ahmed (hereinafter HAROLD SMITH), had a telephone conversation in which, using coded language, they discussed an individual they referred to as "Angel" and the poor quality of the drugs he distributed.

(8) On or about August 20, 2012, within the period of the conspiracy, STEPHEN SCALES had a telephone conversation with LAWRENCE BAYLOR in which, using coded language, they discussed the amount of money LAWRENCE BAYLOR had available, and whether he wanted an additional supply of drugs from STEPHEN SCALES.

(9) On or about August 23, 2012, within the period of the conspiracy, STEPHEN SCALES had a telephone conversation with MERLE WATSON in which, using coded language, they discussed the amount of money STEPHEN SCALES had and his need to find buyers for a quantity of heroin that he wanted to purchase.

(10) On or about August 23, 2012, within the period of the conspiracy, STEPHEN SCALES telephoned LAWRENCE BAYLOR and in a conversation, in which they used coded language, LAWRENCE BAYLOR said that the quality of the heroin STEPHEN SCALES distributed to him most recently was not very good according to his customers.

(11) On or about August 23, 2012, within the period of the conspiracy MAURICE ABNEY had a telephone conversation with STEPHEN SCALES in which, using coded language, ABNEY ordered a quantity of heroin from STEPHEN SCALES.

(12) On or about August 23, 2012, within the period of the conspiracy, STEHEN SCALES and HARLEY MORGAN, also known as Greg (hereinafter HARLEY MORGAN), had a telephone conversation in which STEPHEN SCALES agreed to provide a sample of heroin to

HARLEY MORGAN to give to prospective customers.

(13) On or about August 23, 2012, within the period of the conspiracy, ANTHONY COACHMAN had a telephone conversation with STEPHEN SCALES in which, using coded language, he said was in contact with someone who would purchase a quantity of heroin from STEPHEN SCALES.

(14) On or about August 24, 2012, within the period of the conspiracy, STEPHEN SCALES had a conversation with ALBERT BRISCOE in which, using coded language, he asked ALBERT BRISCOE to find buyers for a quantity of heroin that he wanted to purchase.

(15) On or about August 24, 2012, within the period of the conspiracy, STEPHEN SCALES and LAWRENCE BAYLOR had a telephone conversation in which, using coded language, LAWRENCE BAYLOR said he was contacted by an individual who was interested in purchasing drugs, and whom he was supplying at the price of $90 per gram, and STEPHEN SCALES offered to provide drugs at a lower price for a purchase of 25 grams or more.

(16) On or about August 25, 2012, within the period of the conspiracy, MAURICE ABNEY had a telephone conversation with STEPHEN SCALES in which, using coded language, he advised STEPHEN SCALES of the poor quality of the heroin STEPHEN SCALES provided to him.

(17) On or about August 28, 2012, within the period of the conspiracy, ANTHONY COACHMAN in a telephone conversation with STEPHEN SCALES, in which, using coded language, they discussed a potential heroin customer and the amount of heroin the customer planned to purchase.

(18) On or about August 29, 2012, within the period of the conspiracy, ANTHONY

COACHMAN in a telephone conversation with STEPHEN SCALES, using coded language, said that a customer told him that if the heroin they were providing was of very good quality, the customer could purchase 200 grams a week.

(19) On or about September 1, 2012, within the period of the conspiracy ANGEL CASTILLO and STEPHEN SCALES had a telephone conversation in which, using coded language, STEPHEN SCALES advised ANGEL CASTILLO of the amount of money that he had available, and ANGEL CASTILLO said he would meet him the following evening.

(20) On or about September 3, 2012, within the period of the conspiracy, in a telephone conversation with STEPHEN SCALES, HAROLD SMITH, using coded language, told STEPHEN SCALES that he wanted to obtain a supply of drugs from STEPHEN SCALES.

(21) On or about September 6, 2012, within the period of the conspiracy, STEPHEN SCALES and DWAYNE MORGAN had a telephone conversation in which, using coded language, they discussed DWAYNE MORGAN's providing STEPHEN SCALES with an amount of money for the purchase of a supply of heroin.

(22) On or about September 7, 2012, within the period of the conspiracy, STEPHEN SCALES and HAROLD SMITH had a telephone conversation in which STEPHEN SCALES told HAROLD SMITH he left something for HAROLD SMITH in a blue rag on a motorcycle at STEPHEN SCALES' residence, a location STEPHEN SCALES referred to as "the spot."

(23) On or about September 7, 2012, within the period of the conspiracy, STEPHEN SCALES and HAROLD SMITH met at STEPHEN SCALES' residence at 5216 Karl Place, N.E . in the District of Columbia.

(24) On or about September 9, 2012, within the period of the conspiracy, DWAYNE

MORGAN and STEPHEN SCALES had a telephone conversation in which, using coded language, they discussed STEPHEN SCALES supplying DWAYNE MORGAN with heroin.

(25) On or about September 10, 2012, within the period of the conspiracy, STEPHEN SCALES and HAROLD SMITH, had a telephone conversation in which they discussed methods of processing heroin.

(26) On or about September 11, 2012, within the period of the conspiracy, STEPHEN SCALES telephoned MAURICE ABNEY and warned him about possible law enforcement surveillance in the area of Benning Road and Minnesota Avenue.

(27) On or about September 11, 2012, ANGEL CASTILLO and STEPHEN SCALES had a telephone conversation in which, using coded language, ANGEL CASTILLO asked whether STEPHEN SCALES had the entire $9,000 available that he owed him, and STEPHEN SCALES said that he did not have even half the amount and was trying to collect money.

(28) On or about September 12, 2012, within the period of the conspiracy, STEPHEN SCALES sold a mixture and substance containing a detectable amount of heroin in exchange for $2,000 in United States currency to an individual whose name is known to the Grand Jury.

(29) On or about September 19, 2012, within the period of the conspiracy, ANTHONY COACHMAN telephoned STEPHEN SCALES and advised him in coded language that a customer had given him an amount of money for a heroin purchase, and arranged to meet STEPHEN SCALES later that day.

(30) On or about September 19, 2012, within the period of the conspiracy, ANTHONY COACHMAN and STEPHEN SCALES had a meeting at a location in District Heights, Maryland.

(31) On or about September 20, 2012, within the period of the conspiracy, STEPHEN

SCALES telephoned ANGEL CASTILLO and told him his location at Georgia and Kansas Avenues and ANGEL CASTILLO stated that he would be at that location in two minutes.

(32) On or about September 20, 2012, within the period of the conspiracy, ANGEL CASTILLO and STEPHEN SCALES met for several minutes inside of STEPHEN SCALES's vehicle on Georgia Avenue, N.W.

(33) On or about September 21, 2012, within the period of the conspiracy, STEPHEN SCALES sold approximately five grams of heroin to an individual whose identity is known to the Grand Jury.

(34) On or about September 26, 2012, within the period of the conspiracy, STEPHEN SCALES and ALBERT BRISCOE had a telephone conversation in which, using coded language, STEPHEN SCALES asked whether ALBERT BRISCO had $500, and ALBERT BRISCOE commented on the poor quality of heroin that STEPHEN SCALES had supplied and that he had distributed to his customers.

(35) On or about September 28, 2012, within the period of the conspiracy HARLEY MORGAN telephoned STEPHEN SCALES and, referring to heroin, told STEPHEN SCALES that what he had was melting and that he was going to see whether it got hard.

(36) On or about September 28, 2012, within the period of the conspiracy, STEPHEN SCALES and DWAYNE MORGAN met each other within the District of Columbia.

(37) On or about October 1, 2012, within the period of the conspiracy, ANTHONY COACHMAN had a telephone conversation with STEPHEN SCALES in which, using coded language, he advised STEPHEN SCALES that the heroin STEPHEN SCALES had supplied was of poor quality and they discussed how they processed the heroin by diluting it.

(38) On or about October 2, 2012, within the period of the conspiracy, LAWRENCE BAYLOR telephoned STEPHEN SCALES and arranged a purchase of 15 grams of heroin from STEPHEN SCALES.

(39) On or about October 4, 2012, within the period of the conspiracy, DWAYNE MORGAN sent a text message by telephone to STEPHEN SCALES in which, using coded language, he requested STEPHEN SCALES bring 100 grams of heroin to him.

(40) On or about October 4, 2012, within the period of the conspiracy, DWAYNE MORGAN and STEPHEN SCALES had a telephone conversation in which they arranged to meet each other that day.

(41) On or about October 6, 2012, within the period of the conspiracy, after meeting ANTHONY COACHMAN and STEPHEN SCALES had a telephone conversation in which they discussed their suspicions that law enforcement was conducting surveillance at the location where they met.

(42) On or about October 7, 2012, within the period of the conspiracy, ALBERT BRISCOE telephoned STEPHEN SCALES and, using coded language, they discussed methods of drying heroin that STEPHEN SCALES had.

(43) On or about October 8, 2012, within the period of the conspiracy, ANTHONY COACHMAN had a telephone conversation with STEPHEN SCALES in which, using coded language, ANTHONY COACHMAN told STEPHEN SCALES that the heroin STEPHEN SCALES provided was of very poor quality and STEPHEN SCALES offered to exchange that heroin for a different type of heroin.

(44) On or about October 9, 2012, within the period of the conspiracy, STEPHEN

SCALES and MAURICE ABNEY met in the area of 50th Street and Clay Place, S.E., in the District of Columbia.

(45) On or about October 12, 2012, within the period of the conspiracy, STEPHEN SCALES sold a mixture and substance containing a detectable amount of heroin in exchange for $2,260 in United States currency to an individual whose name is known to the Grand Jury.

(46) On or about October 15, 2012, within the period of the conspiracy ALBERT BRISCOE had a telephone conversation with STEPHEN SCALES in which ALBERT BRISCOE asked whether STEPHEN SCALES wanted Briscoe to sell heroin that STEPHEN SCALES had given ALBERT BRISCOE and which he said was of poor quality, to which STEPHEN SCALES told ALBERT BRISCOE to return the heroin to STEPHEN SCALES.

(47) On or about October 16, 2012, within the period of the conspiracy, STEPHEN SCALES and HARLEY MORGAN had a telephone conversation in which they discussed in coded language the quality of heroin that STEPHEN SCALES was supplying to HARLEY MORGAN.

(48) On or about October 18, 2012, within the period of the conspiracy, STEPHEN SCALES and MERLE WATSON, in telephone conversation, using coded language, made arrangements for MERLE WATSON to purchase a quantity of heroin from ANGEL CASTILLO for STEPHEN SCALES.

(49) On or about October 18, 2012, within the period of the conspiracy, DWAYNE MORGAN sent text message to STEPHEN SCALES in which he inquired in coded language about the status of a supply of heroin STEPHEN SCALES was going to receive on that date.

(50) On about October 18, 2012, within the period of the conspiracy, ANGEL CASTILLO

traveled from the State of New York to the State of Maryland for the purpose of engaging in a drug transaction with MERLE WATSON.

(51) On or about October 18, 2012, within the period of the conspiracy, MERLE WATSON, while meeting with ANGEL CASTILLO, had telephone conversations with STEPHEN SCALES in which, using coded language, they discussed the price and quality of the heroin that ANGEL CASTILLO had available for sale.

(52) On or about October 18, 2012, within the period of the conspiracy STEPHEN SCALES and MERLE WATSON had a telephone conversation out of the presence of ANGEL CASTILLO in which STEPHEN SCALES stated that he had paid over a million dollars to ANGEL CASTILLO and his associates, and, using coded language, said that the price ANGEL CASTILLO was charging for heroin was too high.

(53) On or about October 18, 2012, within the period of the conspiracy, ANGEL CASTILLO distributed a quantity of heroin to MERLE WATSON at a location in Maryland.

(54) On or about October 18, 2012, MERLE WATSON transported a quantity of heroin from Maryland to the District of Columbia.

(55) On or about October 18, 2012, during the period of the conspiracy, MERLE WATSON discarded approximately 40 grams of heroin from a vehicle in order to conceal the heroin from law enforcement agents who were pursuing him.

(56) On or about October 18, 2012, within the period of the conspiracy, STEPHEN SCALES and HAROLD SMITH had a telephone conversation in which, using coded language, they discussed rating the quality of heroin STEPHEN SCALES had supplied to HAROLD SMITH.

(57) On or about October 24, 2012, within the period of the conspiracy, STEPHEN SCALES telephoned MAURICE ABNEY, and, using coded language, warned MAURICE ABNEY that MAURICE ABNEY would have to return a portion of the drugs which STEPHEN SCALES had provided to him if MAURICE ABNEY did not pay for the drugs that week.

(58) On or about November 3, 2012, within the period of the conspiracy, HAROLD SMITH telephoned ANGEL CASTILLO and advised ANGEL CASTILLO that he wished to pay ANGEL CASTILLO money and that he would contact ANGEL CASTILLO when ANGEL CASTILLO came to the area from New York.

(59) On or about November 19, 2012, within the period of the conspiracy, HAROLD SMITH, using coded language, had a telephone conversation with STEPHEN SCALES in which they made arrangements for STEPHEN SCALES to supply HAROLD SMITH with drugs at a location they referred to as "the spot."

(60) On or about November 19, 2012, within the period of the conspiracy, HAROLD SMITH met with STEPHEN SCALES at 5216 Karl Place, N.E. in the District of Columbia.

(61) On or about November 19, 2012, within the period of the conspiracy, HAROLD SMITH after meeting with STEPHEN SCALES, telephoned STEPHEN SCALES and advised him that HAROLD SMITH had been stopped by Metropolitan Police officers, and, using coded language, said that the officers did not find the drugs he had on his person.

(62) On or about November 20, 2012 within the period of the conspiracy MAURICE ABNEY had a telephone conversation with STEPHEN SCALES in which, using coded language, MAURICE ABNEY said that SCALES had not provided MAURICE ABNEY the correct amount of drugs.

(63) On or about December 3, 2012, within the period of the conspiracy, **STEPHEN SCALES** and **HARLEY MORGAN** met in the area of Connecticut and L Streets, N.W. in the District of Columbia.

(64) On or about December 3, 2012, after meeting with **STEPHEN SCALES**, **HARLEY MORGAN** was stopped in the vehicle he was driving by United States Park Police officers in the area of Connecticut Avenue and Dupont Circle N.W., and was found to be in possession of 57 ziplock bags of heroin and $1,136 in United States currency.

(**Conspiracy to Distribute and Possess With Intent to Distribute One Kilogram or More of Heroin**, in violation of Title 21, United States Code, Section 846)

## COUNT TWO

On or about March 28, 2012, within the District of Columbia, **STEPHEN ANTHONY SCALES, also known as Tony,** did unlawfully, knowingly, and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

(**Unlawful Distribution of Heroin**, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C))

## COUNT THREE

On or about April 19, 2012, within the District of Columbia, **STEPHEN ANTHONY SCALES, also known as Tony,** did unlawfully, knowingly, and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

(**Unlawful Distribution of Heroin**, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C))

## COUNT FOUR

On or about May 10, 2012, within the District of Columbia, **STEPHEN ANTHONY SCALES, also known as Tony,** did unlawfully, knowingly, and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

(**Unlawful Distribution of Heroin**, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C))

## COUNT FIVE

On or about June 22, 2012, within the District of Columbia, **STEPHEN ANTHONY SCALES, also known as Tony,** did unlawfully, knowingly, and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

(**Unlawful Distribution of Heroin**, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C))

## COUNT SIX

On or about July 18, 2012, within the District of Columbia, **STEPHEN ANTHONY SCALES, also known as Tony,** did unlawfully, knowingly, and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

(**Unlawful Distribution of Heroin**, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C))

## COUNT SEVEN

On or about August 17, 2012, within the District of Columbia, **STEPHEN ANTHONY SCALES, also known as Tony,** did unlawfully, knowingly, and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

(**Unlawful Distribution of Heroin**, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C))

### COUNT EIGHT

On or about September 12, 2012, within the District of Columbia, **STEPHEN ANTHONY SCALES, also known as Tony,** did unlawfully, knowingly, and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

(**Unlawful Distribution of Heroin**, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C))

### COUNT NINE

On or about October 12, 2012, within the District of Columbia, **STEPHEN ANTHONY SCALES, also known as Tony,** did unlawfully, knowingly, and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

(**Unlawful Distribution of Heroin**, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C))

### COUNT TEN

On or about October 19, 2012, within the District of Columbia, **MERLE VERNON WATSON,** did unlawfully, knowingly, and intentionally possess with intent to distribute a

mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

>(**Unlawful Possession With Intent to Distribute Heroin**, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C))

## COUNT ELEVEN

On or about December 3, 2012, within the District of Columbia, **STEPHEN ANTHONY SCALES, also known as Tony,** did unlawfully, knowingly, and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

>(**Unlawful Distribution of Heroin**, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C))

## COUNT TWELVE

On or about December 3, 2012, within the District of Columbia, **HARLEY MORGAN, also known as Greg,** did unlawfully, knowingly, and intentionally possess with intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

>(**Unlawful Possession With Intent to Distribute Heroin**, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C))

## FORFEITURE ALLEGATION

1. Upon conviction of the offenses alleged in Counts One through Nine and Count Eleven of this Indictment, the government will seek forfeiture of (1) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of this offense; and (2) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, these offenses, pursuant to Title 21, United States Code, Section 853.

2. The government also will seek a money judgment for a sum of money equal to the total value of any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of the offense alleged in Count One, for which defendants are jointly and severally liable, and as a result of the offenses alleged in Counts Two through Nine and Count Eleven, for which defendant **STEPHEN ANTHONY SCALES, also known as Tony,** is liable.

3. If any of the property described above as being subject to forfeiture pursuant to Title 21, United States Code, Section 853, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853, to seek forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

(**Criminal Forfeiture**, pursuant to Title 21, United States Code, Section 853)

A TRUE BILL:

FOREPERSON.

Attorney of the United States in
and for the District of Columbia.